DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

ERNIE RITTER,

                    **Plaintiff,**

     **v.**

**U.S. POSTAL SERVICE, AMERICAN POSTAL WORKERS UNION,**

                    **Defendants.**

_____

1:16-cv-00040-WAL-EAH

TO:    Yohana M. Manning, Esq.
        Angela Tyson-Floyd, Esq., AUSA

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on an Order by the District Court for a Report & Recommendation ("R&R") on the motion to dismiss filed by Defendant U.S. Postal Service ("USPS"). Dkt. No. 70. For the reasons that follow, the Court recommends that the motion to dismiss be granted on the ground that the complaint was barred by the statute of limitations.

## BACKGROUND

Plaintiff Ernie Ritter, an employee of Defendant USPS, initially filed an action on June 23, 2016, alleging that USPS breached the collective bargaining agreement ("CBA") by failing to honor a settlement awarding him back pay, and that the American Postal Workers Union ("Union") breached its duty of fair representation ("DFR") by failing to represent him in his efforts to enforce the settlement agreement with the USPS. Dkt. No. 1.  In October 2016, Ritter filed a First Amended Complaint. Dkt. No. 15. He alleged that he was a postal clerk on St. Croix; he was charged with a crime on January 30, 2004; he was suspended without pay on February 1, 2004; an arbitration award upheld his suspension on May 26, 2005; the charges

against him were dismissed without prejudice in 2005; and a judgment of acquittal entered on September 22, 2008. *Id.* ¶¶ 12-22 & Exs. 2-4. Ritter demanded reinstatement and back pay on October 10, 2008, and he was formally reinstated on October 27. *Id.* ¶ 23 & Ex. 5. The Union's National Business Agent informed Ritter on October 29 that he had to contact a local union steward for assistance concerning back pay. *Id.* ¶ 25 & Ex. 6. The steward told him to submit a form requesting back pay, which he provided in January 2009. *Id.* ¶¶ 25-26.

Ritter did not receive any response concerning that form, although he received assurances from the Union that it would prosecute his back pay claim; he was told to file another grievance, which he did. *Id.* ¶ 27. After contacting local, regional, and national union management representatives, he was notified in October 2011 that the local Union president was meeting with management to settle his grievance. *Id.* ¶ 28. On January 30, 2013, the USPS and Union reached a settlement that the USPS owed Ritter back pay. *Id.* ¶ 29 & Ex. 8. Ritter was required to submit a form listing his back pay hours, and the USPS was required to compensate him within 45 days. *Id.* ¶ 30. He sent in the form in February 2013 but "has since not received his back pay." *Id.* ¶ 31. The Union "continued to give assurances but in 2016 stated its belief that Plaintiff [was] only entitled to back pay from the date his charges were dismissed or September 22, 2008 to October 26, 2008." *Id.* ¶ 32. Ritter contended the USPS owed him back pay from 70 days after February 1, 2004 to October 26, 2008, as well as interest on his back pay. *Id.* ¶ 33.

He alleged three causes of action: (1) breach of the duty of fair representation by the Union for processing his grievance and claims in a perfunctory or arbitrary manner; (2)

*Ritter v. U.S. Postal Service*
1:16-cv-00040
Report and Recommendation
Page 3

enforcement of the 2005 arbitration award against the USPS for failing to pay him for all but 70 days of his suspension; and (3) enforcement of the settlement agreement against the USPS for failing to pay his back pay. *Id.* at 5-6. He also sought interest, punitive damages, and attorney's fees. *Id*. at 7. He attached the CBA and other documents to the amended complaint. Dkt. Nos. 15-1 through 15-8.

The Court entered stays because the parties were attempting to reach a resolution. Dkt. Nos. 23, 27. After lifting the stay in May 2017, the Court ordered the parties to file a status report. Dkt. No. 30. In the status report, Ritter indicated that he "received a backpay check covering the years complained of in his complaint," but that three issues remained: (1) restoration of vacation leave; (2) restoration of sick leave; and (3) fees and expenses incurred in receiving his check. Dkt. No. 31.

In August 2017, the USPS filed a motion to dismiss for failure to state a claim. Dkt. Nos. 41, 42. It argued that the first amended complaint was barred by the six-month statute of limitations applicable to hybrid suits against a union for breach of the duty of fair representation and against an employer for breach of a CBA, under 39 U.S.C. § 1208(b) (the parallel provision to § 301 of the Labor Management Relations Act, allowing suits against the postal service and a union representing postal employees). The injury accrued when Ritter did not get paid (45 days after the settlement agreement, or March 18, 2013) and the limitations period expired on September 16, 2013, but Ritter filed suit over two years later, in June 2016, and he did not allege any facts to show that the limitations period was equitably tolled. *Id*. at 1, 10-12.

*Ritter v. U.S. Postal Service*
1:16-cv-00040
Report and Recommendation
Page 4

In the alternative, the USPS argued that the amended complaint should be dismissed because Ritter had not alleged sufficient facts to show that the Union breached its DFR, which in turn required dismissal of the breach of the CBA claim against the USPS. *Id.* at 2, 12-14. Further, the claims against the USPS for breach of the CBA were moot because the USPS compensated Ritter in full for his backpay, benefits and interest in May 2017, as indicated by an affidavit it attached to its motion (Dkt. No. 42-1). Dkt. No. 42 at 14-15. In addition, Ritter failed to allege that he exhausted his administrative remedies by filing a grievance regarding his dispute over back pay, warranting dismissal for failure to state a claim. *Id.* at 15-17. Finally, to the extent Ritter was entitled to remedies outside the CBA beyond that for which he had been compensated, those damages should be apportioned to the Union based on its breach of the DFR. *Id.* at 17-18. The USPS also noted that Ritter was not entitled to a jury trial and could not collect punitive damages against it. *Id.* at 18-19.

After receiving extensions, Ritter opposed the motion to dismiss in January 2019. Dt. No. 63. As to the statute of limitations issue, Ritter contended that the case relied upon by the USPS, *Podobnik v. U.S. Postal Service*, 409 F.3d 584 (3d Cir. 2005), was decided on summary judgment, not a motion to dismiss, and therefore was not applicable. *Id.* at 3. He argued that the Union continued to give him assurances and, "based on the course of dealing, it is not clear that an earlier time, than the time alleged in the Complaint, was sufficient for the Plaintiff to have discovered the Union[']s breach." *Id.* at 4. He sufficiently pleaded a plausible DFR claim because he alleged that he received a "run around" from his Union for years until it eventually abandoned his meritorious claim; he reached a settlement in 2013

but years later the payment was not received despite assurances from the union. *Id*. at 5. He

also sufficiently pleaded a breach of the CBA by the USPS, *id.* at 5-6; he was not required to

file a separate grievance to recover vacation and sick leave, *id.* at 6-7; and it was

inappropriate to apportion damages at the pleading stage, *id*. at 7. He acknowledged he was

not entitled to a jury trial against the USPS or to punitive damages. *Id*. at 8.

In its Reply, the USPS noted that Ritter did not dispute that the six-month statute of

limitations for lawsuits against the USPS applied, but only that it was unclear that his claims

were untimely. Dkt. No. 68 at 3. However, the amended complaint, on its face, showed that

his suit accrued years before he actually commenced the action: the timeline showed that

Ritter was suspended in 2004 and acquitted of the criminal charges in 2008; he sought back

pay from 2008 through January 30, 2013 when the USPS and Union reached a settlement on

his claim; the USPS agreed that it must pay him within 45 days, or by March 18, 2013; and he

submitted necessary paperwork by February 2013. *Id*. at 3-5. Although he was not paid at

that time, as required by the agreement, he did not bring a lawsuit until June 2016, after

almost three years, allegedly based on the union's "assurances." *Id*. at 5. The amended

complaint did not state what further actions the Union was supposed to have taken that

would have prevented Ritter from filing suit, and thus equitable tolling did not apply. *Id*. at

5-6. The USPS also reasserted that mere allegations of negligent conduct on the part of the

Union were insufficient to state a DFR claim, *id.* at 7-8; Ritter failed to identify a contractual

obligation set out in the 2005 arbitration award that was breached, *id*. at 8-9; and

enforcement of the 2013 settlement was moot, given payment in May 2017, *id.* at 8-10.

*Ritter v. U.S. Postal Service*
1:16-cv-00040
Report and Recommendation
Page 6

On September 2, 2022, the district court referred the motion to dismiss to the undersigned for a report and recommendation. Dkt. No. 70.

## DISCUSSION

Third Circuit case law "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations. If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson*, 313 F.3d 128, 138 (3d Cir. 2002) (internal quotation marks and citation omitted).

### I.      Statutory Background

Ritter's claims against the USPS and the Union are considered a "hybrid suit," in which an employee sues his employer under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of the CBA, and the union for breach of its duty of fair representation for failing to process the employee's claim through the contract dispute resolution process. *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 260 (3d Cir. 1990). The Supreme Court has viewed such hybrid suits as "consisting of two independent, albeit related, causes of action, and has stated that '[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.'" *Id.* (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983)). Thus, in order to succeed on his breach of the CBA claim against USPS, Ritter must also show that the Union breached its DFR. The same holds true for Ritter's DFR claim against the Union: to be

successful on that claim, he must also prove that USPS breached the CBA. Failure to prove

one claim is fatal to Ritter's hybrid suit against both. *See Ahmad v. United Parcel Serv.*, 281 F.

App'x 102, 104 (3d Cir. 2008).

However, suits for violation of contracts between the Postal Service and a labor

organization representing Postal Service employees are brought under 39 U.S.C. § 1208(b).

*See* 39 U.S.C. § 1208(b). The Third Circuit has noted that "the language of section 1208(b) is

nearly identical to that of [LMRA] section 301; hence, other circuits have used cases

interpreting section 301 to interpret section 1208(b)." *Podobnik,* 409 F.3d at 586 n.1

(abrogation on other grounds by *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018)); *see,

e.g., Gibson v. U.S. Postal Serv.,* 380 F.3d 886, 888 n.1 (5th Cir. 2004) ("Although 39 U.S.C. §

1208(b) grants federal courts jurisdiction of disputes arising under collective bargaining

agreements executed by the USPS, § 1208(b) is the analogue to section 301(a) of the [LMRA],

and the law under § 301 is fully applicable to suits brought under § 1208(b)."); s*ee also

Armstrong v. U.S. Postal Serv.,* 2014 WL 3345615, at *1 (D.N.J. July 8, 2014).

## II.      Statute of Limitations

Federal case law requires a party seeking relief under 39 U.S.C. § 1208(b) to file a

claim in court "within six months from the date of accrual." *Vadino,* 903 F.2d at 260; *cf.

DelCostello,* 462 U.S. at 171-72 (hybrid LMRA suits brought against an employer alleging

breach of a CBA and a union's breach of the duty of fair representation are subject to the six-

month statute of limitations prescribed in Section 10(b) of the National Labor Relations Act,

29 U.S.C. § 160(b)). The limitations period, applicable to both the employer and union,

*Ritter v. U.S. Postal Service*
1:16-cv-00040
Report and Recommendation
Page 8

commences "when the claimant discovers, or in the exercise of reasonable diligence should

have discovered, the acts constituting the alleged violation." *Vadino,* 903 F.2d at 260 (internal

quotation marks omitted).[1] In particular, the limitations period for a breach of the duty of

fair representation begins to run "when the plaintiff receives notice that the union will

proceed no further with the grievance." *Id*. (internal quotation marks omitted). Importantly,

however, this six-month window is tolled until, and begins to run, only when both the claim

against the employer and the claim against the labor union have accrued. *See id.* at 261.

"Therefore, the employee's claim on the employer's alleged breach of the collective

bargaining agreement is tolled until it was or should have been clear to the employee that

the union would not pursue the grievance." *Id.* "The relevant statute of limitations question

. . . is not only when [Ritter] knew, or should have known, that the employer breached the

---

[1] Although Ritter served the Union, Dkt. No. 38, it never appeared in this action and Ritter never moved for an entry of default. However, although the Union has not appeared, the Court must still address the DFR claim because it is inextricably intertwined with the statute of limitations issue.  It is well-established that the relevant statute of limitations question is not only when the plaintiff knew, or should have known, that the employer breached the contract, but also when he knew, or should have known, that further appeals to the Union would be futile. *See Vadino*, 903 F.2d at 260-63. Therefore, in order to properly assess an employer's motion to dismiss on statute of limitations grounds, the Court is necessarily required to also evaluate the conduct of the union irrespective of their nonappearance in the suit, lack of joinder to the employer's motion to dismiss, or the filing of its own motion to dismiss on statute of limitations grounds. That is because, as was the case in *Vadino,* the Court herein must determine whether the Union's actions tolled the statute of limitations for the claim against the employer. *Id*. The Court concludes that addressing a motion to dismiss where the employer has appeared, but not the Union, requires the Court to fully assess the allegations in the complaint to determine whether the facts alleged regarding the Union provide a basis to toll the USPS's alleged breach of the CBA/settlement agreement.

contract but also when [he] knew, or should have known, that further appeals to the Union

would be futile." *Id.*

Here, the USPS contends that Ritter failed to file his hybrid claim within the applicable

six-month limitations period. It asserts that the injury accrued when Ritter did not get paid

45 days from the execution of the settlement agreement between the USPS and the Union—

by March 18, 2013; however, Ritter filed suit in June 2016. Dkt. No. 42 at 1, 10-12; Dkt. No.

68 at 3-5. Ritter responds only that the Union continued to give him assurances and "based

on the course of dealing, it is not clear that an earlier time, than the time alleged in the

Complaint, was sufficient for the Plaintiff to have discovered the Union[']s breach." Dkt. No.

63 at 4. His two-sentence opposition focused on his interaction with the Union once he was

not paid, not on his interaction with the USPS, as he appears to make a tolling argument.

As indicated above, the January 30, 2013 settlement agreement between the USPS

and the Union provided that the USPS had "45 days of the signing of this agreement to finalize

the back pay." Dkt. No. 15-8. Forty-five days from January 30, 2013 was March 16, 2013;

because March 16 fell on a Saturday, the USPS had until Monday, March 18, 2013 to provide

the back pay. Ritter was not paid.  He therefore knew by March 19, 2013 that the settlement

agreement was not satisfied, and that is the date when his claim against the USPS accrued.

He had six months from that date—September 19, 2013—to file his complaint. But he filed

his complaint in June 2016, far outside that six-month statute of limitations, and this

limitations bar was apparent on the face of the complaint. *Robinson*, 313 F.3d at 135. Thus,

his claim against the USPS is untimely.

*Ritter v. U.S. Postal Service*
1:16-cv-00040
Report and Recommendation
Page 10

The question then becomes when Ritter "knew, or should have known, that further appeals to the Union would be futile." *Vadino,* 903 F.2d at 261. The amended complaint provides some factual details concerning Ritter's requests to the Union for assistance in obtaining his back pay and other benefits. Starting in 2008, the Union told him who to contact, what form to fill out, and advised him to file another grievance, and Ritter followed that advice. Dkt. No. 15 ¶¶ 24-27. In 2011, the Union informed him it was meeting with USPS to settle the grievance and directed him to provide further documentation. *Id.* ¶ 29. Ritter provided the documentation and, in January 2013, the Union and USPS reached the settlement. *Id.* ¶ 30. But the amended complaint contains no post-settlement allegations concerning what Ritter asked the Union to do (i.e., to follow up with the USPS to enforce the settlement or otherwise represent his concerns), and what date(s) he did so, or whether he filed a grievance to challenge the delay in payment or asked the Union to do so. The amended complaint provides only that the "Union continued to give assurances." *Id.* ¶ 32. This vague terminology provides no factual detail regarding what assurances the Union gave in response to whatever inquiries Ritter made, or when, which obfuscates the point in time when Ritter should have known that further appeals to the Union would have been futile. *Medley v. Atl. Exposition Servs. Inc.,* 550 F. Supp. 3d 170, 187 (D.N.J. 2021) (statute of limitations for hybrid § 301 claims begin to run when plaintiffs are aware that the union will not represent their concerns or proceed with their grievance).

In his opposition, Ritter refers obliquely to his prior "course of dealing" with the union; based on that, he argues that it was not clear to him that at some earlier time, other

than "the time alleged in the Complaint, was sufficient for [him] to have discovered the Union[']s breach." Dkt. No. 63 at 4. But he does not state what "the time alleged in the Complaint" he was referring to or even what the Union's "breach" was. And while his prior course of dealing with the Union stretched from 2008 through settlement in 2013, it was based on a grievance that he had filed where the union advocated on his behalf, and where the process ended successfully with a settlement. That is a different scenario than the vague allegation, post-settlement, that the Union "continued to give assurances" to him, where Ritter did not file a post-settlement grievance or ask the Union to file an enforcement action to prompt the Union to represent his interests.

The amended complaint referred to the Union's "belief" in 2016 that Ritter was owed only a fraction of his back pay. Dkt. No. 15 ¶ 32. If Ritter was attempting to cite an unspecified date in 2016 as the point which he determined that further appeals to the Union would have been futile, it would not serve to toll the running of the statute of limitations. The Union's "belief," apparently communicated years after the settlement was reached, is irrelevant to the actual terms of the settlement executed in 2013, and Ritter provided no factual detail to show whether this new belief had any effect whatsoever on the USPS not paying his back pay under the settlement or impeded the Union from advocating for him at any time.

Using a 2016 date for accrual of the statute of limitations is also unreasonable. Even crediting Ritter's allegation that the Union gave him assurances, post-January 2013, and inferring that the assurances were in response to his requests to enforce the settlement, such "repeated requests to a union to institute proceedings do not normally suffice to toll the

statute [of limitations]." *Yordan v. Am. Postal Workers Union, AFL-CIO*, 293 F.R.D. 91, 98 (D.P.R. 2013) (citing *Christiansen v. APV Crepaco, Inc.,* 178 F.3d 910, 916 (7th Cir. 1999) (collecting cases) and *Vadino,* 903 F.2d at 262). The court in *Yordan* noted that, in *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299 (7th Cir. 1993), the Seventh Circuit found, at the motion to dismiss stage, "that a mere seven months of inactivity was sufficient to put the plaintiff on notice that the union breached its duty." *Yordan*, 293 F.R.D. at 98 (citing *Metz*, 715 F.2d at 304). Similarly, in *Christiansen,* "a year of inactivity by the union, among other things, should have signaled to the plaintiff that the union had breached its duty." *Id.* (citing *Christiansen*, 178 F.3d at 914–15). In *Yordan* itself, two years had elapsed between an email the plaintiff received from the union representative regarding the union initiating enforcement proceedings against the USPS to pay a settlement award and the filing of the federal lawsuit. The court held that "[t]his extensive period of inaction should have indicated to Yordán that the Union may have breached its duty of fair representation, triggering the statute of limitations." *Id.*

Thus, Ritter's one-sentence argument against the application of the statute of limitations that, "based on the course of dealing" with the Union (which he did not describe), it was "not clear that an earlier time, than the time alleged in the Complaint, was sufficient for the Plaintiff to have discovered the Union[']s breach," Dkt. No. 63 at 4, rings hollow. He does not explain why he could not have discovered the Union's "breach" later in 2013, or during 2014 or 2015, rather than sometime before the complaint was filed in June 2016. The statute of limitations is "only tolled while a plaintiff makes diligent efforts to pursue internal

*Ritter v. U.S. Postal Service*
1:16-cv-00040
Report and Recommendation
Page 13

[union] appeals." *Yordan*, 293 F.R.D. at 98. Nothing about the minimal and vague facts alleged, or Ritter's argument, indicates that he was making "diligent efforts" to have the Union pursue his interests. "At some point prior to six months preceding the time this action was brought, [Ritter}, in the exercise of reasonable diligence, should have discovered the acts constituting the alleged violation [i.e. union inactivity]." *Metz*, 715 F.2d at 304. Ritter's DFR cause of action was untimely as well, and that limitations bar was apparent on the face of the complaint. *Robinson*, 313 F.3d at 138.

Accordingly, the Court **RECOMMENDS** that that the USPS Motion to Dismiss be **GRANTED**, Dkt. No. 41, and Ritter's amended complaint be **DISMISSED** because his claims are time-barred under the six-month statute of limitations that applies to lawsuits brought under 39 U.S.C. § 1208(b).

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: September 14, 2022            /s/ Emile A. Henderson III
                                     EMILE A. HENDERSON III
                                     U.S. MAGISTRATE JUDGE