## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| ERNIE RITTER, )<br>)<br>        **Plaintiff,** )<br>)<br>        v. )<br>)<br>UNITED STATES POSTAL SERVICE and )<br>AMERICAN POSTAL WORKERS UNION, )<br>)<br>        **Defendants.** )<br>_____ ) | Civil Action No. 2016-0040 |

**Attorneys:**
**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant United States Postal Service*

## MEMORANDUM OPINION

THIS MATTER comes before the Court on the Report and Recommendation ("R&R") submitted by Magistrate Judge Emile A. Henderson III. (Dkt. No. 71). In his R&R, Magistrate Judge Henderson recommends that Defendant United States Postal Service's ("USPS") Motion to Dismiss ("Motion") (Dkt. No. 41) be granted and Plaintiff Ernie Ritter's ("Plaintiff") Amended Complaint (Dkt. No. 15) be dismissed. For the reasons that follow, the Court will adopt Magistrate Judge Henderson's R&R as modified herein and will dismiss Plaintiff's Amended Complaint without prejudice.

### I.   BACKGROUND

Plaintiff, an employee of Defendant USPS and a member of Defendant American Postal Workers Union ("Union"), files this action against Defendants alleging that the USPS failed to

comply with its obligations under an arbitration award and a settlement agreement with Plaintiff and that the Union breached its duty of fair representation to enforce a collective bargaining agreement governing the terms of Plaintiff's employment with the USPS. (Dkt. No. 15 at 3, 5-6).

Plaintiff was employed with the USPS when he was charged with a crime on January 30, 2004. *Id*. at 3. On February 1, 2004, Plaintiff was suspended without pay. *Id*. An arbitration hearing to determine whether Plaintiff's suspension was proper occurred on March 17, 2005. *Id*. The arbitrator upheld the USPS' indefinite suspension of Plaintiff and noted that "the [USPS] also runs the risk of having to compensate the grievant for all but the first 70 days of the suspension should the [USPS] choose to return the employee to duty after the charges against him are adjudicated." (Dkt. No. 15-2 at 6).

The criminal charges against Plaintiff were dismissed without prejudice in 2005 and a judgment of acquittal was entered on September 22, 2008. *Id*. at 4. Plaintiff demanded reinstatement and back pay on October 10, 2008 and he was formally reinstated shortly thereafter, on October 27, 2008. *Id*. The Union's national business agent informed Plaintiff that he was required to contact a local union steward for assistance concerning the back pay, which Plaintiff did. *Id*. Plaintiff was then instructed to submit a form requesting the back pay, which he provided in January 2009. *Id*. After not receiving any response following submission of the form, Plaintiff received assurances from the Union that they were pursuing his claim for back pay, but the Union eventually informed Plaintiff that he would have to file another grievance. *Id*. Plaintiff filed another grievance and in October 2011, Plaintiff received further assurances from the president of the Union that she was in the process of meeting with management to settle his grievance. *Id*.

On January 30, 2013, the USPS and the Union reached a settlement agreement providing that the USPS would pay back pay to Plaintiff. *Id*. at 5. Pursuant to the agreement, Plaintiff was

required to submit a form listing his back pay hours and the USPS was required to compensate Plaintiff within 45 days of the agreement. *Id*. Plaintiff submitted the form in February 2013 but never received the back pay. *Id*. The Union "continued to give assurances," but stated to Plaintiff in 2016 that it believed that Plaintiff was only entitled to back pay from the date his charges were dismissed to when he was reinstated—September 22, 2008 to October 26, 2008. *Id*. However, Plaintiff contends that the USPS owes him back pay from February 1, 2004—seventy days after he was initially suspended. *Id*.

Plaintiff filed the instant action on June 23, 2016 (Dkt. No. 1) alleging breach of contract and beach of duty of fair representation claims, and then filed an Amended Complaint (Dkt. No. 15) on October 17, 2016. Plaintiff alleges three causes of action: (1) breach of duty of fair representation by the Union for processing his grievance and claims in a perfunctory and/or arbitrary manner; (2) enforcement of the 2005 arbitration award, which Plaintiff alleges requires the USPS to pay him for all but 70 days of his suspension; and (3) enforcement of the settlement agreement requiring the USPS to pay back pay to Defendant. (Dkt. No. 15 at 5-6).

The Court entered a stay of this action on December 13, 2016 (Dkt. No. 23) and extended the stay on April 3, 2017 (Dkt. No. 27) while the parties attempted to negotiate a resolution. The Court lifted the stay on May 9, 2017 and ordered the parties to file a status report. (Dkt. No. 30). Plaintiff notified the Court in his status report that he received a check covering his back pay for the years disputed in the Amended Complaint. (Dkt. No. 31). However, Plaintiff stated that three issues remained that would require further litigation: (1) restoration of vacation leave, (2) restoration of sick leave, and (3) fees and expenses incurred by Plaintiff for his "extraordinary efforts" to receive the payments. *Id*.

Defendant USPS filed a Motion to Dismiss the Amended Complaint for failure to state a

claim (Dkt. No. 41), asserting that Plaintiff's claims are barred by the six-month statute of limitations for suits against the USPS and the Union. (Dkt. No. 42 at 10-12). Defendant USPS also argues that Plaintiff has not sufficiently alleged that the Union breached its duty to fairly represent him, and thus both the claims against the Union and the USPS must be dismissed because they form a hybrid lawsuit whereby the charges against both Defendants must be proven in order to prevail against either Defendant. *Id*. at 7, 12-14. Moreover, Defendant USPS argues that it did not breach the arbitration award because the arbitration did not award Plaintiff any back pay, but rather warned that the USPS might have to pay back pay. *Id*. at 14. In any event, the USPS argues that the issue is now moot because Plaintiff has accepted payment for the back pay. *Id*. at 14-15.

Plaintiff opposes the Motion to Dismiss and argues that because the Union continued to provide him with assurances, it is not apparent from the face of the Amended Complaint when the statute of limitations began to run and when it lapsed. (Dkt. No. 63 at 3-4). Plaintiff also argues that he has sufficiently pleaded a claim against the Union for breach of the duty of good faith and fair dealing because he alleged that the Union gave him the "run around" for years and that despite the Union's assurances, Plaintiff did not receive the back pay he was owed for years. *Id*. at 5.

The Court referred this matter to Magistrate Judge Henderson for an R&R. (Dkt. No. 70). On September 14, 2022, Magistrate Judge Henderson issued the R&R, recommending that Defendant USPS' Motion to Dismiss be granted. (Dkt. No. 71). Magistrate Judge Henderson concluded that Plaintiff failed to file the instant action within the applicable six-month limitations period. *Id*. at 9. The settlement agreement, reached between the USPS and the Union on January 30, 2013, states that the USPS had 45 days from the date of the settlement within which to pay the back pay. *Id*. at 9; *see* (Dkt. No. 15-8). The Magistrate Judge found that when the forty-five day period passed without any payment, Plaintiff was on notice that the USPS had breached its

4

obligations under the settlement agreement, thus initiating the six-month limitations period. (Dkt. No. 71 at 9). However, Plaintiff did not file this action until June 23, 2016, nearly three years after the period of limitations had lapsed. Magistrate Judge Henderson further determined that although the limitations period is tolled until the plaintiff knows or should have known that the Union would not pursue the grievance, Plaintiff did not sufficiently allege that the Union was pursuing, or had the responsibility to pursue, payment from the USPS after the settlement agreement was reached so as to toll the statute of limitations.[1] *Id*. at 10. Moreover, the R&R notes that even if the Union's assurances tolled the statute of limitations, caselaw does not support a tolling of the limitations period for the nearly three years that exist here. *Id*. at 11-12. Magistrate Judge Henderson thus recommends that the Motion to Dismiss be granted and the Amended Complaint be dismissed. *Id*. at 13.

## II. STANDARD OF REVIEW

### A. Review of Magistrate Judge's R&R

Where—as here—the parties do not object to a magistrate judge's R&R, there is no statutory requirement that a district court review the R&R before accepting it. *See Thomas v. Arn*, 474 U.S. 140, 151 (1985); 28 U.S.C. § 636(b)(1)(C) (a district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations *to which objection is made*") (emphasis added); *see also Banco Popular de Puerto Rico v. Gilbert*, 424 F. App'x 151, 153 (3d Cir. 2011) (recognizing that *Thomas* permits the district court to decline

---

[1] The R&R notes that for the period before the settlement agreement, Plaintiff describes the detailed instructions and assurances the Union provided to him. *Id*. at 10-11. But in Plaintiff's description of his interaction with the Union after the settlement agreement, he only provides a "vague" assertion that the "Union continued to give assurances" and "provides no factual detail regarding what assurances the Union gave in response to whatever inquiries Ritter made." *Id*. Judge Henderson concludes that this brief description of the Union's post-settlement conduct does not provide sufficient reason to toll the statute of limitations.

5

to review undisputed recommendations). Notwithstanding *Thomas*, the Third Circuit has stressed that, even in the absence of an objection, the "better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report." *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987).

When no objection to a magistrate judge's report and recommendation is made, the district court reviews the report and recommendation for plain error. *Tice v. Wilson*, 425 F. Supp. 2d 676, 680 (W.D. Pa. 2006), *aff'd*, 276 Fed. App'x 125 (3d Cir. 2008) (explaining that by failing to object to a report and recommendation, the litigant "waived its right to have this Court conduct a *de novo* review," and that in those circumstances, "the scope of [the court's] review is far more limited and is conducted under the far more deferential standard of 'plain error.'"). Under this standard, a district court reviews a magistrate judge's report and recommendation for error that is clear or obvious and "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Sargeant*, 171 F. App'x 954, 957 n.4 (3d Cir. 2006).

### B. Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal based on the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then

6

determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Further, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

#### A. Plain Error Review

The Court finds that there is no plain error in Magistrate Judge Henderson's conclusion that Plaintiff's claims must be dismissed as untimely. The R&R properly recites and applies the law that governs hybrid suits[2] and the relevant statute of limitations.[3] In this regard, there is no

---

[2] Plaintiff's lawsuit against the USPS and the Union is a hybrid suit because it involves both an alleged breach of a collective bargaining agreement against the USPS and breach of a duty of fair representation against a union in one lawsuit. *See Kush v. United Food & Commer. Workers Union Local 152, CLC*, Civil Action No. 12-2120, 2013 U.S. Dist. LEXIS 68090, at *7-8 (D.N.J. May 14, 2013) (explaining that a hybrid suit exists where "an employee files a claim against the union alleging breach of the duty of fair representation . . . together with a claim against the employer alleging breach of the collective bargaining agreement"). In a "hybrid" action, the two claims are considered "inextricably interdependent," that is, "[t]o prevail against either the company or the Union . . . [Plaintiff] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983); *see also Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1386 (6th Cir. 1994) ("In a hybrid suit . . ., to recover against either the employer or the union, a plaintiff must show that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation.").

[3] In *DelCostello v. Teamsters*, 462 U.S. 151 (1983), the United States Supreme Court held that the six-month statute of limitations found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to hybrid claims. *See also Myers v. AK Steel Corp.*, 156 F. App'x 528, 530 (3d Cir. 2005) ("A hybrid suit such as this [where an employee files suit against his employer and union]

clear or obvious error in the Magistrate Judge's findings that the period for Plaintiff to file his claims lapsed in September 2013, nearly three years before Plaintiff filed the instant action, and that Plaintiff inadequately pleaded facts from which the Court could conclude that the limitations period was tolled. This reason alone is sufficient to dismiss the Amended Complaint. Accordingly, the Court will adopt the Magistrate Judge's Recommendation to dismiss the Complaint.

In light of the hybrid nature of this action, the Court will also address why Plaintiff's claim that the Union breached its duty of fair representation and his claim to enforce the arbitration award cannot stand as pleaded. As noted below, the Court will grant Plaintiff leave to amend his Complaint, and any proposed amendment must address all of the deficiencies in the Complaint.

### B. Other Claims

#### 1. Breach of Duty of Fair Representation

Count I of the Amended Complaint must be dismissed because Plaintiff has insufficiently pleaded that the Union breached its duty of fair representation. "The duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). To prove a breach of the duty of fair representation, a plaintiff must show that the union's conduct was arbitrary, discriminatory or in bad faith. *Id*.

A union's actions breach the duty under the "arbitrary" prong if they "can fairly be characterized as so far out of a 'wide range of reasonableness' that [they are] wholly irrational or arbitrary." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 77 (1991). The "wide range of reasonableness" standard allows the union to make discretionary judgments and decisions without

---

must be brought within the six-month statute of limitations mandated by § 10(b) of the NLRA.").

8

fear of liability should those judgments ultimately be wrong. *Marquez*, 525 U.S. at 45-46. Further, "mere ineptitude or negligence in the presentation of a grievance by the union" is not the type of conduct intended to be included under the "arbitrary" standard. *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 960 (3d Cir. 1981). Rather, the rule is that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . ." *Vaca*, 386 U.S. at 191.

To establish that union conduct was discriminatory, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Bakos v. Am. Airlines, Inc.*, 748 F.App'x 468, 472 (3d Cir. 2018). "The standard for 'discriminatory' conduct has been analogized to the standard for a violation of Title VII of the 1964 Civil Rights Act, which contemplates discrimination based on race, color, religion, sex or national origin." *Wilson v. Am. Postal Workers Union*, 433 F.Supp.2d 444, 449 (D. Del. 2006) (citing *Farmer v. ARA Servs*, 660 F.2d 1096, 1104 (6th Cir.1981)); *see also, Jeffreys v. Commc'n Workers of Am., AFL-CIO*, 354 F.3d 270, 276 (4th Cir. 2003) ("The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice.").

Finally, in order to constitute bad faith, a plaintiff must show "intent to mislead" on the part of the union. *Marquez*, 525 U.S. at 47. A finding of bad faith constituting a breach of the duty of fair representation requires "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348 (1964).

Here, Plaintiff alleges details of how the Union assisted him in requesting back pay, including by instructing him to file a form 8038, directing him to file an additional grievance, and providing assurances that it would prosecute his claim. (Dkt. No. 15 at 4-5). Additionally, the

9

Union reached a settlement agreement with the USPS resulting in the USPS agreeing to back pay for Plaintiff. *Id*. at 5. Plaintiff alleges that the Union "continued to give assurances but in 2016 stated its belief that Plaintiff is only entitled to back pay from the date his charges were dismissed or September 22, 2008 to October 26, 2008." *Id*. Plaintiff concludes that "[t]he Union has acted in an arbitrary and/or perfunctory manner in processing Plaintiff's claims." *Id*.

Plaintiff does not plead facts sufficient to plausibly state a claim for relief against the Union for arbitrary conduct. Plaintiff explains in detail how the Union provided guidance to him and was ultimately able to reach a settlement agreement with the USPS, with no allegations plausibly supporting a claim for arbitrary conduct. To the extent that Plaintiff's claim for breach of duty of fair representation is directed toward the Union's conduct following the settlement, Plaintiff devotes just one sentence to describe the Union's post settlement conduct: "[t]he Union continued to give assurances but in 2016 stated its belief that Plaintiff is only entitled to back pay from the date his charges were dismissed or September 22, 2008 to October 26, 2008." *Id*. at 5. Without more, Plaintiff's claim that the "Union breached [its] duty [of fair representation] by processing Plaintiff's grievance and claims in a perfunctory and/or arbitrary matter" is conclusory and fails to state a plausible claim that the Union's conduct—before or after the settlement agreement was reached—was "so far out of a 'wide range of reasonableness' that [it was] wholly irrational or arbitrary." (Dkt. No. 15 at 5); *Air Line Pilots Ass'n*, 499 U.S. at 77; *see also Danao v. ABM Janitorial Servs.*, No. 14-6621, 2015 U.S. Dist. LEXIS 65418, at *24 (E.D. Pa. May 18, 2015) (finding that plaintiff's conclusory allegations failed to demonstrate his union's breach of duty of fair representation and stating that "[a] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational.") (citing *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S.

10

65, 67 (1991)).

Finally, Plaintiff does not allege that the Union acted in a discriminatory manner or that it exhibited bad faith with an intent to mislead Plaintiff. Accordingly, Plaintiff has failed to plead a plausible claim against the Union for breach of duty of fair representation.

Because Plaintiff brings a hybrid claim, but has insufficiently alleged that the Union breached its duty of fair representation, Plaintiff's claim against the USPS in Count III of the Amended Complaint for breach of the collective bargaining must also fail. This, therefore, provides an independent reason why Plaintiff's claims must be dismissed.

### 2. Enforcement of Arbitration Award

Plaintiff's claim for enforcement of the arbitration award based on a requirement that the USPS must pay Plaintiff for all but 70 days of his suspension (Dkt. No. 15 at 6) cannot survive the Motion to Dismiss because Plaintiff provides no factual support for this contention. Indeed, the arbitration award to which Plaintiff refers contains no such requirement. Instead, the arbitration award merely states that the USPS "runs the risk of having to compensate the grievant for all but the first 70 days of the suspension should the [USPS] choose to return [Plaintiff] to duty after the charges against him are adjudicated." (Dkt. No. 15-2 at 6). In other words, the arbitration award stated, in *dicta*, that such a ruling could be a result but did not make the ruling itself.

Moreover, the Court also notes that Plaintiff stated in a status report that he received a check covering his back pay for the years disputed in the Amended Complaint. (Dkt. No. 31). This issue is therefore moot.

For these reasons, Plaintiff's claim in Count II of the Amended Complaint will be dismissed with prejudice.

### C. Leave to Amend

Although Plaintiff has not requested leave to amend, the Court finds it appropriate to address it here. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."). Pursuant to Fed. R. Civ. P. 15(a), courts should "freely" give leave to amend complaints when justice requires. *In re Burlington Coat Factory*, 114 F.3d at 1434. Leave to amend should be "freely given," because "[a]llowing amendments to correct errors in existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits." *Ali v. Intertek Testing Servs. Caleb Brett*, 332 F. Supp. 2d 827, 829 (D.V.I. 2004) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1474 (1990)). Indeed, leave to amend should be denied only when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent a justifying reason, it is an abuse of discretion to deny leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

In view of the foregoing, the Court will grant Plaintiff leave to file a second amended complaint to address the deficiencies discussed herein regarding the timeliness of Plaintiff's claims and the viability of the claim for breach of duty of fair representation. Plaintiff shall have up to and including October 30, 2023 within which to file such an amended complaint.

## IV. CONCLUSION

In view of the foregoing, the Court will adopt Magistrate Judge Henderson's R&R as modified herein and dismiss Plaintiff's claims against Defendants with leave to amend. An appropriate Order accompanies this Memorandum Opinion.

Date: September 30, 2023

_____/s/_____
WILMA A. LEWIS
District Judge