**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **ERNIE RITTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. 2016-0040 |
| v. | ) |
| | ) |
| **UNITED STATES POSTAL SERVICE and** | ) |
| **AMERICAN POSTAL WORKERS UNION,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**Attorneys:**
**Yohana M. Manning, Esq.**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Angela Tyson-Floyd, Esq.**
St. Croix, U.S.V.I.
    *For Defendant United States Postal Service*

## MEMORANDUM OPINION

**Lewis, District Judge**

    THIS MATTER comes before the Court on Defendant United States Postal Service's ("USPS") Motion to Dismiss ("Motion") (Dkt. No. 79), USPS's Memorandum in support thereof (Dkt. No. 80), Plaintiff Ernie Ritter's ("Plaintiff") Opposition thereto (Dkt. No. 82), and USPS's Reply (Dkt. No. 83). For the reasons discussed below, the Court will deny as moot USPS's request to strike Plaintiff's demands for a jury trial and punitive damages. Further, the Court will grant Defendant USPS's Motion to Dismiss and dismiss Plaintiff's claims against both Defendants with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff initiated this action by bringing claims of breach of contract and breach of duty of fair representation against Defendant USPS and Defendant American Postal Workers Union ("APWU"), respectively. (Dkt. No. 1). Plaintiff subsequently filed a First Amended Complaint ("FAC"), asserting claims for breach of duty of fair representation, enforcement of arbitration award, and enforcement of settlement agreement, stemming from USPS's alleged failure to provide Plaintiff with back pay to which he was entitled and APWU's alleged failure to adequately represent Plaintiff regarding his back pay grievance. (Dkt. No. 15).

Defendant USPS moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 41). Magistrate Judge Emile A. Henderson III then issued a Report & Recommendation ("R&R"), recommending that USPS's Motion to Dismiss be granted. (Dkt. No. 71). After neither party objected to the R&R, this Court adopted the R&R as modified in its Memorandum Opinion and granted USPS's Motion to Dismiss. (Dkt. No. 72). The Court dismissed Plaintiff's claims for breach of duty of fair representation and enforcement of settlement agreement without prejudice and dismissed Plaintiff's claim for enforcement of arbitration award with prejudice. *Id.* at 1-2. The Court granted Plaintiff leave to amend his complaint to address the deficiencies that the Court discussed in its Memorandum Opinion. *Id.* at 2.

On November 15, 2023, Plaintiff filed the now-operative Second Amended Complaint ("SAC"), alleging Breach of Duty of Fair Representation (Count I); Enforcement of Arbitration Award (Count II); and Enforcement of Settlement Agreement (Count III). (Dkt. No. 76 ¶¶ 35-44).

Having received his back pay,[1] Plaintiff seeks "secondary damages" (Dkt. No. 82 at 5), including "restoration of vacation leave, restoration of sick leave earned during that time and the fees and expenses incurred in receiving [his back pay] after extraordinary efforts." (Dkt. No. 31 ¶ 2). Defendant USPS seeks to dismiss all three counts for failure to state a claim. (Dkt. No. 80 at 8-16).[2]

According to Plaintiff's allegations and exhibits, Plaintiff is an employee of Defendant USPS and a member of Defendant APWU. (Dkt. No. 76 ¶ 12). On January 30, 2004, during Plaintiff's employment with USPS, Plaintiff was charged with a crime. *Id.* ¶ 14. After an article appeared in a local newspaper, USPS sought an emergency suspension of Plaintiff. *Id.* ¶ 15. On May 26, 2005, after a hearing on the issue, an arbitrator upheld Plaintiff's suspension. *Id.* ¶¶ 16, 18; *see also* (Dkt. No. 15-2). However, USPS was warned in the arbitration award that if Plaintiff were to prevail in his criminal case and be reinstated, USPS would be responsible for compensating Plaintiff for all but 70 days of his suspension. (Dkt. No. 76 ¶ 17).

Plaintiff was acquitted of criminal charges on September 22, 2008. *Id.* ¶ 21; *see also* (Dkt. No. 15-4). He demanded reinstatement and back pay on October 10, 2008, and was formally reinstated on October 27, 2008. (Dkt. No. 76 ¶ 22); *see also* (Dkt. No. 15-5). Plaintiff was informed that he was required to contact a local union steward for assistance concerning the back pay, and

---

[1] In a May 12, 2017 Status Report, Plaintiff informed the Court that he had "received a backpay check covering the years complained of in his complaint." (Dkt. No. 31 ¶ 1); *see also* (Dkt. No. 80-1) (declaration of government counsel attesting that Plaintiff received two checks from USPS covering his back pay and interest). As such, in its initial Memorandum Opinion, the Court found that Plaintiff's request for back pay was moot. *Ritter*, 2023 U.S. Dist. LEXIS 176251, at *16.

[2] USPS also seeks to strike Plaintiff's demands for a jury trial and punitive damages. (Dkt. No. 80 at 16-17). Plaintiff does not oppose this request and concedes that he is not entitled to punitive damages or a jury trial against USPS. (Dkt. No. 82 at 5). USPS's request to strike is therefore moot.

he complied. (Dkt. No. 76 ¶¶ 23-24); *see also* (Dkt. No. 15-6). Plaintiff was then instructed to submit a form requesting the back pay, which he did. (Dkt. No. 76 ¶ 25). Plaintiff alleges that, after not receiving a response, he contacted APWU and was eventually told that he would have to file another grievance. *Id.* ¶ 26. Plaintiff again complied with the instructions and filed a grievance. *Id.*

Plaintiff alleges that he then began contacting local, regional, and national union and management representatives. *Id.* ¶ 27. Plaintiff's inquiries were not fruitful until October 2011, when the president of the local APWU informed Plaintiff that she was in the process of meeting with management to settle his grievance. *Id.*; *see also* (Dkt. No. 15-7). On January 30, 2013, USPS and APWU reached a settlement providing that USPS would award back pay to Plaintiff. (Dkt. No. 76 ¶ 28). Pursuant to the agreement, Plaintiff was required to submit a form listing his back pay hours to management, after which USPS would be required to compensate Plaintiff within 45 days. *Id.* ¶ 29.

Plaintiff alleges that he submitted the form in February 2013 but has not received back pay or any update regarding his back pay. *Id.* ¶ 30. Plaintiff further alleges that, since his efforts to contact various levels of APWU regarding USPS's failure to provide his back pay, APWU has "completely failed to communicate with Plaintiff and has otherwise ignored his claim." *Id.*

Plaintiff's allegations detail various steps that he and APWU took to attempt to secure his back pay following the settlement agreement. Plaintiff met in person with representatives from USPS and APWU on September 16, 2014. *Id.* ¶ 31. After this meeting, APWU sent an email to USPS indicating that APWU and USPS were supposed to start working on Plaintiff's case and that it was "annoying" that Plaintiff's back pay had not yet been finalized. *Id.* USPS and APWU met again on November 20, 2014 to process Plaintiff's back pay. *Id.* ¶ 32. Despite this meeting, USPS took no action on Plaintiff's back pay for nearly three months. *Id.* ¶ 33. Then, on February 2, 2015,

4

Plaintiff's representative from APWU contacted USPS demanding an update regarding Plaintiff's back pay as well as any evidence of communications regarding Plaintiff's back pay. *Id.*

Plaintiff alleges that he provided documents to APWU demonstrating that he was entitled to back pay and that APWU assured Plaintiff that "they would not stop until he was made whole." *Id.* ¶ 34. Plaintiff alleges that he subsequently retained counsel, and after counsel communicated with APWU, APWU refused to cooperate with either Plaintiff or his counsel. *Id.* Plaintiff asserts that "[t]his litigation ensued within the timeframe provided by law, after that." *Id.*

## II. APPLICABLE LEGAL PRINCIPLES

Federal Rule of Civil Procedure 12(b)(6) calls for dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). As stated in *Connelly v. Lane Construction Corp.*, the Third Circuit follows the analysis set forth by the Supreme Court in *Bell Atlantic v. Twombly* and *Ashcroft v. Iqbal* when considering a Rule 12(b)(6) motion:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Mamouzette v. Jerome*, No. CV 13-0117, 2024 WL 2271880, at *2-3 (D.V.I. May 20, 2024) (reviewing the applicable Rule 12(b)(6) analysis).

"When assessing the merits of a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving

5

party." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). Further the district court must accept "all reasonable inferences that can be drawn from [well-pleaded factual allegations] after construing them in the light most favorable to the nonmovant." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x 65, 66 (3d Cir. 2017) (internal citation and quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'" *Nekrilov v. City of Jersey*, 45 F.4th 662, 668 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boseman v. Upper Providence Twp.*, 680 Fed. App'x 65, 67 (3d Cir. 2017) (internal citation and quotation omitted).

## III.    DISCUSSION

### A.    Breach of Duty of Fair Representation and Enforcement of Settlement Agreement — Count I & Count III

USPS argues that Plaintiff's claim for breach of duty of fair representation against APWU and Plaintiff's claim for enforcement of settlement agreement against USPS must be dismissed for failure to state a claim. (Dkt. No. 80 at 8). First, USPS contends that Plaintiff has not alleged facts sufficient to establish a claim for breach of the duty of fair representation against APWU. *Id.* at 14. Specifically, USPS argues that, according to Plaintiff's own allegations, APWU *did* adequately represent Plaintiff in his back pay grievance by helping him reach a settlement agreement with USPS. *Id.* at 10-11. USPS maintains that "but for" APWU's representation of Plaintiff, USPS might not have entered into the settlement agreement. *Id.* at 11. USPS notes that Plaintiff has not alleged that APWU was solely responsible for enforcing this agreement or that APWU prevented Plaintiff from bringing suit himself to enforce the agreement. *Id.* at 11. Alternatively, USPS contends that Plaintiff's claim for breach of duty of fair representation must be dismissed because

6

it was filed after the six-month statute of limitations had passed, which USPS asserts is not subject to equitable tolling. *Id.* at 12-13.

Second, USPS argues that Plaintiff's claim for enforcement of settlement agreement must fail along with his claim for breach of duty of fair representation. USPS maintains that, by bringing these separate claims against both his union and his employer, Plaintiff has brought a "hybrid suit." *Id.* at 8-9. Accordingly, USPS argues that Plaintiff "must prove both charges in order to prevail against either defendant." *Id.* at 9. Thus, because Plaintiff has failed to state a claim for breach of duty of fair representation, USPS contends that he cannot state a claim for enforcement of settlement agreement. Moreover, USPS argues that even if Plaintiff had brought a plausible claim against APWU, the hybrid claim would still fail because Plaintiff's claim against USPS is independently insufficient. USPS asserts that its payment of Plaintiff's back pay along with interest renders moot the alleged breach of the settlement agreement. *Id.* at 14. While USPS acknowledges that Plaintiff has brought claims for other employee benefits besides the back pay and interest, USPS argues that Plaintiff has not sufficiently alleged that he exhausted administrative remedies for these benefits. *Id.* at 15-16.

Plaintiff opposes dismissal of Count I and Count III. *See* (Dkt. No. 82 at 4). Plaintiff asserts that USPS violated the settlement agreement by waiting several years to pay him his back pay, and further asserts that APWU breached its duty of fair representation by handling his claim for back pay in a perfunctory manner. *Id.* at 1-2. Plaintiff agrees with USPS that he has brought a hybrid claim. *Id.* at 4. However, Plaintiff contends that he has adequately pleaded both his claim against USPS and his claim against APWU. *Id.* Specifically, with regard to Count I, Plaintiff argues that he has sufficiently alleged that APWU's actions taken after the entry of the original settlement agreement were arbitrary, discriminatory, or in bad faith, because these actions required Plaintiff

7

to enforce the settlement agreement himself and incur "attendant damages" associated with enforcing the settlement agreement. *Id.* at 4-5. As for Count III, Plaintiff argues that his claim against USPS is not moot because USPS has not fully compensated Plaintiff for his secondary damages associated with the delay in receiving his back pay, including "the diminished value from the time value of money." *Id.* at 5. Plaintiff asserts that he was not required to exhaust administrative remedies for these damages because they only became evident following USPS's delay in paying him back pay. *Id.* Plaintiff further argues that USPS's statute of limitations defense is premature because the face of his complaint does not, standing alone, clearly indicate that his claims are time-barred. *Id.* at 3-4.

Here, it is undisputed that Count I and Count III of the SAC constitute a "hybrid suit" against APWU and USPS. *See* (Dkt. No. 80 at 8-9); (Dkt. No. 82 at 4); *see also Kush v. United Food & Commer. Workers Union Local 152, CLC*, Civil Action No. 12-2120, 2013 U.S. Dist. LEXIS 68090, at *7 (D.N.J. May 14, 2013) (explaining that an employee-plaintiff brings a "hybrid suit" when they "file[] a claim against the union alleging breach of the duty of fair representation by discriminatorily or arbitrarily failing or refusing to pursue his ensuing contractual grievance against the employer, together with a claim against the employer alleging breach of the collective bargaining agreement."). In a hybrid action, the claim against the plaintiff's union and the claim against the plaintiff's employer are "inextricably interdependent," such that the plaintiff must prove both claims to prevail on either. *Delach v. Lindy Paving Inc.*, No. 2:23-CV-01632, 2024 U.S. Dist. LEXIS 69301, at *8 (W.D. Pa. Apr. 16, 2024) (quoting *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)); *see also Roe v. Diamond*, 519 F. App'x 752, 757 (3d Cir. 2013) (quoting *Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001)) ("A union's breach

8

of the duty of fair representation is a 'necessary condition precedent' to a . . . claim against an employer for breach of a collective bargaining agreement.").

Accordingly, for either Count I or Count III to survive a motion to dismiss pursuant to Rule 12(b)(6), Plaintiff must plausibly allege that APWU breached its duty of fair representation. As he has failed to do so, both Counts must be dismissed.

### 1. Legal Standard

The Court's prior Memorandum Opinion in this action outlined the legal standard governing claims for breach of duty of fair representation. *See Ritter v. United States Postal Serv.*, Civil Action No. 2016-0040, 2023 U.S. Dist. LEXIS 176251, at *11 (D.V.I. Sep. 30, 2023). "The duty of fair representation requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1998) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "To prove a breach of the duty of fair representation, a plaintiff must show that the union's conduct was arbitrary, discriminatory or in bad faith." *Id.*

A union's actions breach the duty under the "arbitrary" prong if they "can fairly be characterized as so far out of a 'wide range of reasonableness' that [they are] wholly irrational or arbitrary." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 77 (1991). The "wide range of reasonableness" standard allows the union to make discretionary judgments and decisions without fear of liability should those judgments ultimately be wrong. *Marquez*, 525 U.S. at 45-46. Further, "mere ineptitude or negligence in the presentation of a grievance by the union" is not the type of conduct intended to be included under the "arbitrary" standard. *Findley v. Jones Motor Freight, Div. Allegheny Corp.*, 639 F.2d 953, 960 (3d Cir. 1981). Rather, the rule is that "a union may not

arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . ." *Vaca*, 386 U.S. at 191.

To establish that union conduct was discriminatory, "a plaintiff must adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Bakos v. Am. Airlines, Inc.*, 748 F.App'x 468, 472 (3d Cir. 2018). "The standard for 'discriminatory' conduct has been analogized to the standard for a violation of Title VII of the 1964 Civil Rights Act, which contemplates discrimination based on race, color, religion, sex or national origin." *Wilson v. Am. Postal Workers Union*, 433 F.Supp.2d 444, 449 (D. Del. 2006) (citing *Farmer v. ARA Servs*, 660 F.2d 1096, 1104 (6th Cir.1981)); *see also Jeffreys v. Commc'n Workers of Am., AFL-CIO*, 354 F.3d 270, 276 (4th Cir. 2003) ("The duty of fair representation prohibits only 'invidious' discrimination, such as discrimination based on constitutionally protected categories like race or gender, or discrimination that arises from animus or prejudice.").

Finally, in order to constitute bad faith, a plaintiff must show "intent to mislead" on the part of the union. *Marquez*, 525 U.S. at 47. A finding of bad faith constituting a breach of the duty of fair representation requires "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348 (1964).

**2. Analysis**

Here, Plaintiff does not allege any facts to suggest that APWU engaged in discriminatory or bad faith conduct. Rather, the apparent basis for Plaintiff's breach of duty of fair representation claim is that APWU engaged in arbitrary conduct following Plaintiff's settlement agreement with USPS on January 30, 2013. *See* (Dkt. No. 82 at 1-2, 5). Specifically, Plaintiff argues that APWU

ignored—or processed in a perfunctory fashion—Plaintiff's meritorious grievance regarding USPS's delay in performing in accordance with the settlement agreement. *Id.* at 1-2.

However, notwithstanding Plaintiff's conclusory allegation that APWU ignored his claim, the factual allegations in the SAC indicate that APWU acted within the "wide range of reasonableness" afforded to a union in these circumstances. *Air Line Pilots*, 499 U.S. at 77. This is because the SAC describes a number of actions taken by APWU to enforce the settlement agreement in the face of USPS's delay. In September 2014, after Plaintiff alerted APWU to the fact that he had not received his back pay pursuant to the settlement agreement, APWU met with Plaintiff and USPS. (Dkt. No. 76 ¶ 31). After the meeting, APWU sent an email pressuring USPS to finalize the back pay. *Id.* In November 2014, APWU again met with USPS to attempt to process Plaintiff's back pay. *Id.* ¶ 32. Three months later, after Plaintiff still had not received his back pay, APWU contacted USPS demanding an update regarding the status of the back pay as well as any evidence of communications regarding the back pay. *Id.* ¶ 33.

In light of these actions taken by APWU to pressure USPS to process Plaintiff's back pay, the Court cannot reasonably infer that APWU ignored USPS's delay in processing the back pay or handled this delay in a perfunctory manner. *See Hale v. Branch*, No. 4:22-cv-10300, 2024 U.S. Dist. LEXIS 104321, at *10 (E.D. Mich. June 7, 2024) (finding that the plaintiff had not demonstrated that her union acted arbitrarily where the union took steps to pressure her employer to process her back pay and she had not "plausibly suggested, or provided any evidence to support, what more the [union] should have done to ensure that she received her back pay award faster."). Thus, Plaintiff has not plausibly alleged that APWU's actions after the enactment of the settlement agreement were arbitrary, discriminatory, or taken in bad faith. Accordingly, he has not stated a claim for breach of duty of fair representation.

11

As the Court has previously explained, because Plaintiff "brings a hybrid claim, but has insufficiently alleged that [APWU] breached its duty of fair representation, Plaintiff's claim against USPS . . . must also fail." *Ritter*, 2023 U.S. Dist. LEXIS 176251, at *15. Therefore, Count I and Count III must be dismissed.

### B.    Enforcement of Arbitration Award — Count II

USPS argues that Plaintiff's claim for enforcement of the arbitration award must be dismissed because the Court previously dismissed with prejudice an identical claim in the FAC. (Dkt. No. 80 at 14-15).[3] Plaintiff concedes that this claim should be dismissed pursuant to the Court's prior dismissal with prejudice. (Dkt. No. 82 at 6).

"By its very nature, a dismissal with prejudice means that it is final and binding." *Progme Corp. v. Comcast Cable Communs. LLC*, No. 17-1488, 2017 U.S. Dist. LEXIS 182484, at *9 (E.D. Pa. Nov. 3, 2017). Thus, a plaintiff cannot reassert claims previously dismissed with prejudice. *See Harrison v. City & Cnty. of S.F.*, No. 20-cv-05178, 2023 U.S. Dist. LEXIS 166668, at *9 (N.D. Cal. Sep. 19, 2023) ("The Court, however, has previously dismissed with prejudice this identical [] claim . . . Accordingly, [this] claim will again be dismissed with prejudice.").

Here, Plaintiff attempts to assert a claim for enforcement of the arbitration award. But as both parties acknowledge, the Court dismissed with prejudice an identical claim in the FAC. (Dkt. No. 72 at 1). Accordingly, the Court will, again, dismiss Count II with prejudice.

---

[3] The Court found that (1) the arbitration award itself did not require USPS to pay Plaintiff any back pay and (2) the issue was moot because Plaintiff had, through a status update, informed the Court that he had received a check covering his back pay. *Ritter*, 2023 U.S. Dist. LEXIS 176251, at *15-16.

### C.     Leave to Amend

"Pursuant to Fed. R. Civ. P. 15(a), courts should 'freely' give leave to amend complaints when justice requires."[4] *Honore v. United States Dep't of Agric.*, Civil Action No. 2016-0055, 2020 U.S. Dist. LEXIS 71065, at *13 (D.V.I. Apr. 22, 2020) (quoting *In re Burlington Coat Factory*, 114 F.3d 1410, 1434 (3d Cir. 1997)). Leave to amend should be "freely given," because "[a]llowing amendments to correct errors in existing pleadings furthers the objectives of the federal rules that cases should be determined on their merits." *Ali v. Intertek Testing Servs. Caleb Brett*, 332 F. Supp. 2d 827, 829 (D.V.I. 2004) (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1474 (1990)). Indeed, a motion to amend should be denied only when there exists evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend a complaint is "addressed to the sound discretion of the district court." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).

"In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The Third Circuit has held that denying leave to amend a complaint that failed to state a claim for relief, on the ground of futility, is "especially appropriate where a party has already been given the opportunity to amend the complaint." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 564 F. App'x

---

[4] Plaintiff has not sought leave to amend his SAC. However, "[e]ven when a plaintiff has not sought leave to amend a complaint found deficient upon Rule 12(b)(6) motion, [he] should be granted the opportunity to amend [his] complaint unless amendment would be inequitable or futile." *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. CIV.A. 09-571, 2009 WL 3242136, at *4 (D.N.J. Oct. 7, 2009).

13

672, 673 (3d Cir. 2014); *see also Cyril v. Pereira*, Civil Action No. 2016-0017, 2022 U.S. Dist. LEXIS 125067, at *35 (D.V.I. July 14, 2022) (finding that leave to amend would be inequitable and futile where the plaintiffs had already amended their complaint twice and were on notice of potential deficiencies in their pleadings); *O'Reilly Plumbing & Constr., Inc. v. Lionsgate Disaster Relief, LLC*, Civil Action No. 2019-0024, 2024 U.S. Dist. LEXIS 95263, at *32 (D.V.I. May 29, 2024) (same).

Here, Plaintiff has previously amended his complaint twice. Moreover, prior to the most recent iteration of the complaint, the Court put Plaintiff on notice of the deficiencies in his pleadings by dismissing all three claims in the FAC for failure to state a claim. Despite this, the SAC still fails to state a claim for relief. In fact, the allegations added to the SAC, which detail APWU's activities following the settlement agreement, *weaken* an essential proposition of Plaintiff's claim—namely, that APWU acted arbitrarily in pursuing Plaintiff's back pay grievance.

For these reasons, the Court finds that further leave to amend would be inequitable and futile as to Plaintiff's hybrid claim for breach of duty of fair representation against APWU and enforcement of settlement agreement against USPS. Accordingly, and in light of the fact that the Court has previously dismissed with prejudice Plaintiff's enforcement of arbitration award claim, the Court will dismiss, with prejudice, Plaintiff's claims against APWU and USPS in their entirety.

## IV. CONCLUSION

In view of the foregoing, Defendant USPS's request to strike Plaintiff's demands for a jury trial and punitive damages will be denied as moot. Further, USPS's Motion to Dismiss will be granted in its entirety and the Second Amended Complaint will be dismissed with prejudice.

An appropriate Order accompanies this Memorandum Opinion.

Date: August 12, 2024                            _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge